```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
UNITED STATES OF AMERICA,            :
                                     :       19-cr-277 (JSR)
        v.                           :
                                     :
LARRY WHITE,                         :       MEMORANDUM ORDER
                Defendant.           :
------------------------------------ x
```

JED S. RAKOFF, U.S.D.J.

In 2019, the parties here briefed a motion to suppress, but the Court did not rule on it then because defendant Larry White shortly thereafter pled guilty. Subsequently, however, the Court permitted White to withdraw his guilty plea, following his retention of new counsel. After White's arraignment on the second superseding indictment on August 19, 2020, the Court directed the parties to file all pretrial motions by September 18, 2020, and it directed defendant's new counsel to notify the Court if White wanted the Court to rule on his previously filed motion to suppress. On September 18, 2020, in a telephone application to the Court, defense counsel notified the Court that White wished to pursue his suppression motion, but stated that White would rest on his previously submitted briefs. Having considered the seven briefs submitted on the topic and the associated filings, ECF Nos. 12, 13, 15-17, 21, 23-27, the Court grants some, but not all, of the relief White seeks.

-1-

## BACKGROUND

In early 2019, New York state prison inmates had several phone conversations with someone who was using White's cellphone -- and law enforcement was listening in, believing that the phone calls concerned ongoing criminal activity. On March 6, 2019, the person using White's cellphone said something that caused law enforcement to believe that he was on the brink of committing a robbery. The next morning, the police arrested White. When arresting White, the NYPD purportedly relied upon a New York State parole revocation warrant; however, the actual warrant was not issued until after White's arrest.

A few days earlier, however, on March 1, 2019, federal law enforcement had obtained a warrant to search White's home and to seize items, including "the WHITE Cellphone." The warrant also authorized a search of the phone's contents. When presenting the warrant application to the magistrate judge, an Assistant United States Attorney hand-wrote on Attachment A to the agent's supporting affidavit: "The WHITE Cellphone has phone number 917-667-6539." ECF No. 13-4, at 12. The magistrate judge then handwrote, also on Attachment A to the agent's affidavit, that the White cellphone is "identified by number (917-667-6539)." Id. at 23.

Around the time they arrested him, law enforcement was tracking the location of White's cellphone. (White does not

challenge this use of GPS tracking information, which was authorized by a warrant not at issue here.) The location data showed that White's cellphone was in his immediate vicinity when police arrested him. They searched him and his vehicle, but they could not find his phone.

A woman then exited the same building that White had exited right before his arrest. The parties' versions of the facts here diverge:

- The Government claims that law enforcement called White's cellphone and observed it ringing in the woman's pocket. NYPD Detective Grzelak approached her and asked whether she had White's cellphone. She said that she did and handed it to Grzelak.

- The defense claims that law enforcement observed the woman using <u>her own</u> cellphone, a red iPhone. Detective Grzelak approached her and ordered her to turn over the cellphones in her possession. She refused, but eventually complied after Grzelak repeated the order. Grzelak took both cellphones, called White's number to see which phone rang, and then gave the red iPhone back to the woman.

Later, law enforcement searched White's home pursuant to the search warrant, but they did not seize anything. Police officers left an inventory that said, "no property taken from location."

-3-

Five days after White's arrest, the Government requested that Facebook (the parent company of Instagram) preserve the contents of White's Instagram account. The next day, on March 13, 2019, the Government extracted the contents of White's cellphone and began to search that data. On March 21, 2019, White was presented on the criminal complaint in this case, which quoted messages from his cellphone.

White then moved to suppress the evidence obtained incident to White's arrest and the evidence obtained from the search of White's cellphone -- along with derivative evidence that the Government located using evidence obtained from White's cellphone (the "fruit of the poisonous tree"). Following full briefing, the Court scheduled an evidentiary hearing for August 13, 2019. The night before the hearing, however, the Government informed the Court that it would not seek to introduce the evidence from White's cellphone at trial, so that there was no need for the hearing.

This still left open, however, White's argument that the "fruit of the poisonous tree" should be suppressed. The Court therefore ordered a further round of briefing on that issue. That second round of briefing, in turn, raised some further questions that prompted the Court to order a further response from the Government. After the Government submitted this final response, White moved for leave to file a one-page further reply brief, attaching the proposed reply brief to his motion. The Court now

-4-

grants that motion, ECF No. 26, and has considered that reply brief in reaching its determinations herein.

## ANALYSIS

This is, ostensibly, a motion about the legality of (a) White's arrest and the search and seizure incident to that arrest and (b) the seizure and subsequent search of White's cellphone. But, through three rounds of briefing, the parties have narrowed the dispute; now, the Court need not rule upon either of these two root issues.

First, the Government has agreed not to introduce at trial the two items seized incident to White's arrest (marijuana and his vehicle), mooting the dispute regarding the legality of his arrest.

Second, while the Government has not conceded the illegality of its seizure and search of White's cell phone, the Government, on the eve of the evidentiary hearing, agreed not to introduce at trial the messages obtained from the cell phone and asked that the hearing not go forward. Because it chose not to proceed with the evidentiary hearing, the Court finds that the Government is now estopped for present purposes from arguing that the seizure and search were lawful.

Thus, White has already received most of what he originally sought, i.e., suppression of the items seized and suppression of the cell phone messages. However, he also seeks three additional forms of relief: first, suppression of the contents of his

-5-

Instagram account as the alleged "fruit of the poisonous tree"; second, an order compelling the Government to identify any additional such "fruits"; and third, an order forbidding the Government from further reliance on the evidence extracted from his cellphone in future investigations. The Court considers each in turn.

## I.   The Instagram Account

Because, for the reasons stated above, the Court presumes that the seizure and search of White's cellphone were unlawful, the Court must also suppress any "fruit of the poisonous tree" -- i.e., evidence that the Government obtained using the tainted evidence extracted from White's cellphone. See Wong Sun v. United States, 371 U.S. 471 (1963). White argues that this includes the contents of his Instagram account, for two reasons: First, he claims the Government only had probable cause to believe that the Instagram account contained evidence of crime because of the tainted evidence obtained from White's cellphone. Second, he argues the Government could not have located his Instagram account without the contents of his cellphone

### A.   Probable Cause To Search the Instagram Account

Turning first to probable cause, the Court must "excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant." United States v. Reilly, 76 F.3d 1271, 1282 n.2

(2d Cir. 1996). The Government acknowledges that when it applied for a search warrant for White's Instagram account, it referenced in its warrant application evidence obtained from the search of White's cellphone. Nevertheless, the Government argues that, at the time, untainted evidence independently established probable cause to believe the Instagram account contained evidence of crime. The Government identifies three untainted lines of evidence:

First, the Government relies upon a victim's statement. The alleged victim, a drug dealer, claims that White robbed him in December 2015. Specifically, the drug dealer told investigators that White stole $15,000 in drug proceeds and some jewelry. He also told investigators that approximately two weeks after the robbery, he saw a picture of White on what he believed to be White's Instagram account, wearing some of the stolen jewelry. The alleged victim could not remember the URL for White's Instagram account, but he remembered that it had the letters "LO" (White's nickname) in it. See Warrant Application, ECF No. 21-1, ¶ 10.

Second, the Government cites publicly available photos on White's Instagram account that show him wearing jewelry resembling that which he purportedly stole from the drug dealer. These photos serve to corroborate the victim's account.[1]

---

[1] White objects that the Government could not have found his Instagram account without relying on the contents of his cell phone, so these photos, even if publicly available, are tainted

Finally, the Government cites a statement by a cooperating witness, who was once detained with White in nearby cells in a holding area at the courthouse, at which time White allegedly confessed that he had robbed the aforementioned drug dealer. With respect to this third item, the defense requested discovery, and, pursuant to this Court's order, the U.S. Marshals Service produced video recordings showing the movements of detained defendants on the relevant date. The defense maintains, based upon this evidence, that White and the cooperating witness were never sufficiently near one another in the holding area to have had this conversation. The Court agrees that this evidence at least places sufficient doubt on the cooperating witness's statement (along with the inherently dubious circumstances surrounding this statement) that, for present purposes, the Court must set it aside.

The question, then, is whether the statement by the drug dealer victim, combined with the publicly available photos on White's Instagram showing jewelry resembling the dealer's description, provides probable cause to believe the Instagram account contained evidence of crime. Probable cause is present when "all the facts . . . viewed through the lens of common sense, would make a reasonably prudent person think that a search would

---

and must be disregarded. The Court takes up this argument below and concludes that the Government located the Instagram account without reliance on the cell phone.

reveal contraband or evidence of a crime." Florida v. Harris, 568 U.S. 237, 248 (2013). By the time the Government applied for a warrant for the Instagram account, White had already been indicted for Hobbs Act robbery in connection with the robbery of the drug dealer victim. Thus, the Grand Jury agreed that there was probable cause to conclude that that crime had occurred. Moreover, the drug dealer had entered into a cooperation agreement with the Government, under which he faced severe penalties if he lied. See Warrant Application, ECF No. 21-1, ¶ 10 n.1. For these reasons, the Court concludes that the drug dealer's statement that he saw White wearing a stolen piece of jewelry in a photo posted on White's Instagram account, combined with publicly available photos on White's Instagram account showing jewelry consistent with the alleged victim's description, was sufficient to make a reasonably prudent person think that a search of the Instagram account would reveal evidence of a crime.

The Court therefore concludes, without reliance on tainted evidence or the jailhouse witness's statement regarding the alleged courthouse confession, that probable cause supported the search of the Instagram account.

B.  Finding the Instagram Account

White argues that even if the Government had probable cause to search the Instagram account, it would not have been able to locate it without his "handle," or URL, which the Government found

by searching his cellphone. However, the Government has provided evidence showing not only that it <u>could have</u> located the White Instagram account without relying upon his cellphone, but that it <u>did</u>:

> Agents were able to identify the White Instagram Account by searching for it publicly on Instagram's site. On March 12, 2019, our office sent a letter to Facebook (the parent company of Instagram) to request that the contents of the White Instagram Account be preserved. . . . The White Cellphone was not extracted until March 13, 2019. Therefore, because the White Instagram Account was known to agents and its contents preserved before the contents of White Cellphone were extracted, the URL associated with the White Instagram Account is not a fruit of the White Cellphone search.

ECF No. 25, at 4 (footnote omitted). Given this evidence, even the defense conceded in its final brief that "it now appears that the 'handle' for Mr. White's Instagram is not the direct fruit of the illegal search at issue." ECF No. 26, at 4.

In short, the contents of White's Instagram account are not a fruit of the poisonous tree, so the Court denies White's motion to suppress them.

## II. <u>Additional "Fruits of the Poisonous Tree"</u>

The defense asks the Court to compel the Government to identify any additional evidence that the Government located using the contents of White's cellphone. In making this request, the defense relies upon Federal Rule of Criminal Procedure 16 and the

Government's constitutional obligations, as articulated by Brady v. Maryland, 373 U.S. 83, 87 (1963), and its progeny.

With respect to the latter, the defense asserts that the Government's Brady obligations extend to the suppression context. This is a question on which the courts outside the Second Circuit are divided. The Fifth and Ninth Circuits have applied Brady to the suppression context. See United States v. Barton, 995 F.2d 931 (9th Cir. 1993) (holding that the Government's destruction of evidence that could be used to impeach statements made in support of a warrant application could violate due process under Brady); Smith v. Black, 904 F.2d 950 (5th Cir. 1990), vacated on other grounds, 503 U.S. 930 (1992) (stating that Brady claims can be made when the State fails to turn over material impeachment evidence prior to a suppression hearing). However, in dicta, the D.C. Circuit and the Sixth Circuit have expressed doubts. United States v. Bowie, 198 F.3d 905, 912 (D.C. Cir. 1999) ("[I]t is hardly clear that the Brady line of cases applies to suppression hearings. Suppression hearings do not determine a defendant's guilt or punishment, yet Brady rests on the idea that due process is violated when the withheld evidence is 'material either to guilt or punishment....'"); United States v. Bullock, 130 F. App'x 706, 723 (6th Cir. 2005) (same).

The Second Circuit has not yet ruled on whether Brady applies in the context of a motion to suppress or the like. See United

-11-

States v. Nelson, 193 Fed. App'x 47, 50 (2d Cir. 2006) ("Whether Brady and its progeny require disclosures in advance of pre-trial hearings is an open question in this circuit."). Three courts in this district have assumed arguendo that it does, though only to conclude that the Government did not violate any potential Brady requirements. See United States v. Barcelo, 05-cr-3315, 2014 WL 4058066, at *8 (S.D.N.Y. Aug. 15, 2014) (Sullivan, J.); United States v. Thomas, 981 F. Supp. 2d 229, 245 (S.D.N.Y. 2013) (Pauley, J.); United States v. Rajaratnam, 09-cr-1184, 2010 WL 1691745, at *1 (S.D.N.Y. Apr. 27, 2010) (Holwell, J.).

In the instant case, the Court ordered the Government to address this issue by posing the following question: "Is the Government obligated under Brady, Giglio, and Fed. R. Crim. P. 16 to disclose other 'fruits' of the cellphone search to the defense?" In response, the Government conceded that "[i]dentifying fruits of a search that are not obvious to the defense from Rule 16 discovery and the production of search warrants could be considered information that is 'material to preparing the defense' under Rule 16" and noted that "[i]n any event, Department of Justice policy encourages disclosure beyond that required by Brady and Giglio, including the disclosure of information that might have a significant bearing on the admissibility of prosecution evidence." ECF No. 25, at 4-5.

With respect to Rule 16, however, the Government points to Rule 12(b)(4)(B), which provides that "the defendant may, in order to have an opportunity to move to suppress evidence . . ., request notice of the Government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16." Fed. R. Crim. P. 12(b)(4)(B) (emphasis added). The Government discusses cases regarding 12(b)(4)(B) at some length, drawing from those cases a principle that it is the defendant's burden to identify evidence he might seek to suppress. But the Court need not reach that issue here, because, whatever the relevance of Rule 12(b)(4)(B) to the Rule 16 inquiry, it cannot affect the constitutional analysis under Brady.

Turning, then, to that issue, the Court notes that Brady itself spoke only of "evidence material either to guilt or to punishment." Brady, 373 U.S. at 87. But it is now clear that the Government's obligations extend to "not only exculpatory material, but also information that could be used to impeach a key government witness." United States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001) (citing Giglio v. United States, 405 U.S. 150, 154 (1972)); accord Strickler v. Greene, 527 U.S. 263, 281-82 (1999). (requiring disclosure of evidence "favorable to the accused, either because it is exculpatory, or because it is impeaching").

By expanding Brady to cover impeachment evidence, the Supreme Court has made clear that Brady material is not limited to evidence

-13-

"material to guilt" in the limited sense in which that phrase might be read, i.e., tending to show whether the defendant committed the crime charged. Rather, Brady covers evidence that is material to the Government's ability to prove guilt. But if Brady covers material that impeaches a key Government witness, should it not also cover material that impugns a key piece of Government evidence? And what can more effectively impugn] Government evidence than a demonstration that that evidence was seized unlawfully?

This conclusion applies with special force in the suppression context, where Brady meets the exclusionary rule. The Supreme Court has long rejected the notion that federal courts "would not inquire into the manner in which [evidence was] obtained." Weeks v. United States, 232 U.S. 383, 394 (1914). The Court has a supervisory duty to ensure that the Government does not proffer fruits of the poisoned tree at trial. See Mapp v. Ohio, 367 U.S. 643, 648 (1961) ("[C]onviction by means of unlawful seizures . . . should find no sanction in the judgments of the courts . . . . [S]uch evidence shall not be used at all.") (internal quotation marks and citations omitted).

The Court concludes that due process requires that the Government promptly identify any evidence that it may offer at trial that was located or identified using data from the White cellphone. The defense may then move to suppress it as fruits of

the poisonous tree, although the Government may avoid this result by showing, for example, that there is an independent source, as the situation involving the Instagram account demonstrates.

The Government argues that it "has provided the defense with sufficient information to make any pretrial motions, including what the Government considered to be fruits of the search of the White Cellphone." Id. at 7. But this is a little too imprecise and subjective.[2] What due process requires is that the Government disclose which evidence that it intends to offer at trial was obtained or identified, at least in part, based on the contents of the White cellphone. As the defense rightly points out, the Government is uniquely able to determine how it came across evidence in its possession, and how it identified that evidence as being useful to its case. If it came across or identified evidence at least in part because of something it learned from an unlawful search, and if it might offer that evidence at trial, then it must disclose that fact to the defense. And, to the extent this has not already been done, it must be done by no later than eight days before the start of trial, i.e., by October 5.

### III. Future Use of White's Cellphone

Finally, White seeks an order enjoining the Government from

---

[2] More responsive, however, is the Government's representation that it never showed the contents of the cellphone to a cooperating witness and that it never relied upon it in a warrant application (other than for the Instagram account). See id.

-15-

using the contents of his cellphone in any future investigation. But the defense has not yet proved all, or even any, of the requirements for the issuance of such extraordinary injunctive relief, and here it is the defense that bears the burden. Accordingly, this request is denied, without prejudice.

*   *   *

For the foregoing reasons,

- White's motion for leave to file a one-page reply brief, ECF No. 26, is hereby granted, and the Court has considered the reply brief in reaching its determinations herein.

- White's request to suppress the contents of his Instagram account is hereby denied.

- No later than noon on Monday, October 5, 2020, the Government shall provide to the defense a written statement identifying with particularity any evidence (excluding the contents of White's Instagram account) that the Government may offer at trial that it located or identified using, at least in part, information from White's cellphone.

- If the defense wishes to move to suppress any such evidence as fruits of the cellphone search, then it must

do so by filing on ECF a written motion with a supporting memorandum of law by no later than noon Friday, October 9, 2020. If the defendant files such a motion, the Court will address the motion on October 13 before the start of trial.

- White's request for an order enjoining the Government from using the contents of White's cellphone in any future investigation is hereby denied, without prejudice.

- The Clerk of Court is directed to close docket entries 12, 22, and 26.

SO ORDERED.

Dated:   New York, NY
         September 28, 2020

                                        _____
                                        JED S. RAKOFF, U.S.D.J.