UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LARRY WHITE,

                Petitioner,

      -against-

UNITED STATES OF AMERICA,

                Respondent.

24-cv-05590 (JSR) (KHP)

19-cr-277 (JSR)

**REPORT AND RECOMMENDATION ON MOTION TO VACATE CONVICTION AND SENTENCE**

**TO:    THE HONORABLE JED S. RAKOFF, UNITED STATES DISTRICT JUDGE**
**FROM: THE HONORABLE KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

      Petitioner Larry White ("Petitioner"), who is currently incarcerated and proceeding pro se, filed the instant Motion to Vacate his Conviction and Sentence (the "Motion") pursuant to 28 U.S.C. § 2255 claiming violations of his Fourth Amendment rights and ineffective assistance of counsel. (ECF No. 79.)[1] For the reasons set forth below, I respectfully recommend that the motion be denied.

## BACKGROUND

      On March 20, 2019, the Government filed a criminal complaint against Petitioner regarding an alleged destruction of a vehicle by means of fire and explosive, under 18 U.S.C. § 844(i). (ECF No. 1.) Daniel Parker, Esq.,[2] was appointed to represent Petitioner at his presentment on March 21, 2019. (ECF No. 3.) On or around April 17, 2019, the government

---

[1] Unless otherwise noted, citations to the ECF docket are to the criminal case, *United States v. White*, No. 19-cr-277-JSR.

[2] The undersigned has no relationship to Daniel Parker, who shares the same common surname.

1

sought and obtained a grand jury indictment charging Petitioner with multiple counts in connection with a string of robberies. (ECF No. 5.)

The indictment charged Petitioner with arson, in violation of 18 U.S.C. § 844(i); two counts of robbery and aiding and abetting robbery under the Hobbs Act, in violation of 18 U.S.C. § 1951; three counts of using and possessing firearms in furtherance of crimes of violence, in violation of 18 U.S.C. § 924(c); and conspiracy to commit robbery under the Hobbs Act, in violation of 18 U.S.C. § 1951. (*Id.*)  On June 10, 2019, Benjamin Silverman, Esq., was appointed to serve as Parker's co-counsel. (ECF No. 10.)

Subsequently, on July 1, 2019, a grand jury returned a nine-count superseding indictment charging Petitioner with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(3); conspiracy to commit robbery under the Hobbs Act, in violation of 18 U.S.C. § 1951; robbery and aiding and abetting robbery under the Hobbs Act, in violation of 18 U.S.C. § 1951; narcotics conspiracy, in violation of 21 U.S.C. § 846; arson, in violation of 18 U.S.C. § 844(i); and three counts of using and carrying firearms in furtherance of crimes of violence or drug trafficking, in violation of 18 U.S.C. § 924(c). (ECF No. 11.)

Finally, on October 30, 2019, a grand jury returned a twelve-count superseding indictment ("S2") charging Petitioner with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) ("Count One"); assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(3), relating to a January 3, 2019 robbery ("Count Two"); robbery and aiding and abetting robbery under the Hobbs Act, in violation of 18 U.S.C. § 1951, relating to the January 3, 2019 robbery ("Count Three"); using and carrying a firearm, which was brandished,

2

in furtherance of Count Three, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (ii) ("Count Four"); conspiracy to commit robbery under the Hobbs Act, in violation of 18 U.S.C. § 1951 ("Count Five"); robbery and aiding and abetting robbery under the Hobbs Act, in violation of 18 U.S.C. § 1951, relating to a December 31, 2015 robbery ("Count Six"); using and carrying a firearm, which was brandished, in furtherance of Count Six, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (ii) ("Count Seven"); two counts of narcotics conspiracy, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(D) ("Counts Eight and Eleven"); using and carrying firearms in furtherance of drug trafficking, some of which were brandished and discharged, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), and (iii) ("Count Nine"); being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g), relating to a June 3, 2017 shooting ("Count Ten"); and arson, in violation of 18 U.S.C. § 844(i) ("Count Twelve"). (ECF No. 29.)

On November 5, 2019, Petitioner pleaded guilty to three counts in the superseding information, S3 19 Cr. 277, charging him with felony possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g), in relation to the June 3, 2017 shooting; conspiracy to commit robbery under the Hobbs Act, in violation of 18 U.S.C. § 371; and conspiracy to commit arson, in violation of 18 U.S.C. § 371. (ECF Nos. 30-34.) At his plea allocution, Petitioner confirmed on the record that he was satisfied with his representation by Messrs. Parker and Silverman, that he had the chance to discuss the matter with them and told them all he knew, he had read the superseding information and discussed it with his lawyer, and that he understood his right to go to trial. (ECF No. 32, at 5:19-7:25.) During the plea allocution, the court asked Petitioner if he understood his rights, and Petitioner confirmed he understood. (ECF No. 32, at 8:18-10:11.) Further, Petitioner confirmed he understood that he would give up those rights by pleading

guilty. (ECF No. 32, at 10:12-16.) Finally, Petitioner confirmed he was not threatened or coerced to plead guilty. (ECF No. 32, at 10:14-16.) He then stated on the record the crimes to which he pleaded guilty and answered factual questions from the judge. (ECF No. 32, at 15:4-24, 17:12-20:9.)

However, on or around June 26, 2020, in advance of sentencing, Petitioner filed a letter with the Court requesting to withdraw his guilty plea, alleging that his attorney, Parker, had provided ineffective assistance of counsel, including by failing to properly investigate a potential alibi witness. (ECF No. 38.) At a conference on July 20, 2020, the Court stated it did not credit any of Petitioner's allegations against Parker, but allowed him to withdraw his guilty plea and retain new counsel – Robert Walters, Esq. (ECF No. 44, at 6:19-7:3.) The Court scheduled a trial date for October 13, 2020. (ECF No. 47.)

On the morning of October 13, 2020, instead of proceeding with the scheduled jury selection, Petitioner again pleaded guilty. (ECF No. 62.) Specifically, he pleaded guilty to Counts One, Four, Six, Ten, and Twelve of S2. (ECF No. 64.) Petitioner was once again sworn in and questioned by the judge. (ECF No. 62.) Specifically, he confirmed he was satisfied with Mr. Walters's representation and discussed the matter with him. (ECF No. 62, at 4:18-25.) The judge again confirmed he understood his rights and that he would forfeit them by pleading guilty. (ECF No. 62, at 5:16-7:8.) He confirmed he understood the charges to which he would be pleading guilty (and the related sentencing information). (ECF No. 62, at 7:19-11:1.) He again confirmed he was not coerced or threatened to plead guilty. (ECF No. 62, at 13:16-18.) The court again questioned Petitioner on the record about the facts of underlying the charges, and

4

Petitioner explained what he had done. (ECF No. 62, at 14:4-21:3.) Finally, Petitioner pleaded guilty. (ECF No. 62, at 21:4-23.)

On April 28, 2021, Petitioner was sentenced to 180 total months imprisonment, broken as follows: 96 months to run concurrently on each of Counts One, Six, Ten, and Twelve, and 84 months on Count Four, to run consecutively to the sentence for the other counts. The sentencing judge also ordered three years of supervised release on Counts One, Six, Ten, and Twelve, but five years on Count Four, with all supervised release to run concurrently. (ECF No. 78, at 19:1-20:14.) Judgment was entered on July 27, 2021. (ECF No. 72.) On September 18, 2023, Petitioner's appeal was summarily dismissed as barred by his appeal waiver. (ECF No. 76.)

On July 16, 2024, Petitioner filed the instant Motion under 28 U.S.C. § 2255 raising the following two basic grounds for relief: (1) his Fourth Amendment rights were violated when his cellphone was seized by law enforcement during his arrest on March 7, 2019; (2) his attorneys rendered ineffective assistance of counsel by failing to thoroughly investigate an alibi defense, pressuring him to plead guilty, failing to challenge the eyewitness identifications that the Government planned to use at trial, and failing to prepare for trial. (ECF No. 79.)

## LEGAL STANDARDS

To prevail on a postconviction motion to vacate a sentence, a petitioner must show the sentence imposed was "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A sentence is "otherwise subject to collateral attack" within the meaning of 28 U.S.C. § 2255(a) where there is "an error of law or fact that constitutes 'a fundamental defect which

inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

A petitioner may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of" a valid guilty plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also United States v. Coffin*, 76 F.3d 494, 496 (2d Cir. 1996) ("A knowing and voluntary guilty plea waives all nonjurisdictional defects in the prior proceedings."); *United States v. Jackson*, No. 21-2344, 2023 WL 6629582, at *1 (2d Cir. Oct. 12, 2023). Rather, a petitioner "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth" by the courts. *Tollett*, 411 U.S. at 267. Any such claim may be brought through a habeas petition. *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). Further, a habeas petition may be filed on this basis "whether or not the Petitioner could have raised the claim on direct appeal." *Id.*

## DISCUSSION

Petitioner's § 2255 motion attacks his conviction in two key ways: (1) illegal detention in violation of the Fourth Amendment; and (2) ineffective assistance of counsel on various grounds. To the extent that the Petitioner's ineffective assistance of counsel claims could, at least in theory, undermine the "voluntary and intelligent character of the guilty plea," *Tollett*, 411 U.S. at 267, the Court addresses Petitioner's arguments in reverse order.

1. **Petitioner's Sixth Amendment Claims of Ineffective Assistance of Counsel**

The Sixth Amendment of the United States Constitution provides that a criminal defendant "shall enjoy the right . . . to have the assistance of counsel for his defense." U.S.

Const. amend. VI. Habeas petitions that assert ineffective assistance of counsel claims are analyzed under the clearly established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a Petitioner claiming ineffective assistance of counsel in violation of the Sixth Amendment must establish that: (1) his counsel's representation "fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 692–94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Under the first prong of the *Strickland* test, the Petitioner bears the burden of demonstrating that his counsel's errors were "so serious that counsel was not functioning as the counsel guaranteed [to] the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (cleaned up). This standard is intentionally high because ineffective assistance claims "are quite often the law's equivalent of 'buyer's remorse' or 'Monday morning quarterbacking' . . . [and d]ecisions by criminal defense counsel are often choices among bad alternatives[.]" *Mui v. United States*, 614 F.3d 50, 57 (2d Cir. 2010). Because ineffective assistance of counsel claims "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial . . . the *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve." *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 689-90). In applying *Strickland*, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the

7

circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks and citation omitted).

Under the second prong of the *Strickland* test, a Petitioner can demonstrate prejudice by proving that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, in determining whether a habeas Petitioner has suffered prejudice as a result of his trial counsel's allegedly unreasonable acts or omissions, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently;" rather, *Strickland* asks courts to consider whether the result would have been "reasonably likely" to have been different. *Harrington*, 562 U.S. at 111 (internal citations omitted). In other words, the "question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. Further, in cases of overwhelming guilt, counsel is not likely to violate *Strickland*'s prejudice prong even where clear error can be established. *Rodriguez v. New York*, No. 16-cv-5615 (JFB), 2017 WL 1655217, at *10 (E.D.N.Y. May 2, 2017) (citing *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001)). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700. Thus, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

"Ineffective assistance of counsel during plea negotiations can invalidate a guilty plea and make granting withdrawal appropriate, to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (citing *United States v. Couto*, 311 F.3d 179, 185 (2d Cir. 2002), *abrogated on other grounds by Padilla v. Kentucky*, 559 U.S. 356 (2010)). "To satisfy the second prong of *Strickland* in the context of plea negotiations, the defendant must show that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial." *Id.* (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Petitioner asserts several grounds for a finding that his counsel was ineffective. First, he asserts Mr. Parker failed to investigate an alibi defense. Second, he asserts his defense counsel declined to challenge eyewitness testimony. Third, he asserts counsel "would regularly tell [P]etitioner" that if he failed to plead guilty, his mother would be arrested, or exert other forms of pressure on him to plead guilty. Fourth, he complains that insufficient pre-trial motions were filed leading up to trial. Fifth, he asserts Mr. Parker regularly said he believed Petitioner was guilty and complaining to the judge would extend his sentence. Sixth, he says counsel "admitted [P]etitioner[']s guilt to Pretrial Services during the preparation of the first PSI" by asserting telling Pretrial Services that Petitioner had "shot someone with a gun." (ECF No. 79, at 17.)

As an initial point, any complaint about the assistance of Mr. Parker (and/or Mr. Silverman), Petitioner's first counsel, is mooted by the fact that the Court permitted Petitioner to withdraw the guilty plea entered under their advice. Messrs. Parker and Silverman did not

9

advise Petitioner in connection with his second, operative guilty plea; only Mr. Walters did that. Nor does Petitioner allege any conduct on the part of Messrs. Parker or Silverman that could, even under the most liberal reading of his petition, support an inference that they hampered Mr. Walters's representation of Petitioner when he independently advised Petitioner to enter the operative guilty plea. Rather, Petitioner alleges counsel was ineffective in counseling him regarding his *first* (vacated) guilty plea. Most importantly, Petitioner has attached no exhibits or evidence to his submissions which require further inquiry into the allegations he raises against Messrs. Parker and Silverman. Accordingly, I respectfully recommend that the Court deny the petition insofar as it pertains to Messrs. Parker and Silverman.

While, in most instances, Petitioner does not name Mr. Walters by name, the Court construes any reference to "counsel" in his papers potentially to refer to Mr. Walters, as opposed to Messrs. Parker or Silverman.

### a. Failure to Investigate an Alibi

Petitioner claims his counsel was constitutionally deficient because counsel failed to investigate an exculpatory alibi. Specifically, he states: "Petitioner provided to defense counsel an alibi witness who was present with petitioner throughout the day," as well as photos purportedly showing petitioner in a different area of the city "participating in activities completely inconsistent with the government[']s theory." (ECF No. 79, at 16.) The Respondent argues he is not entitled to relief on this point because "any alibi witness . . . would have been mistaken or lying." (ECF No. 91, at 19.) Further, they say he fails on this petition to provide the name(s) of such witness(es).

Based on this Court's review, Petitioner has failed to prove that counsel's investigation into his purported alibi would have changed his plea. Petitioner has not given any details at all regarding his purported alibi defense, which forecloses a finding that it likely would have changed his plea. "[W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Petitioner has supplied no names of alibi witnesses and failed to attach any of the photographs he mentions giving to counsel. Nor does he assert that he is unable to attach the photos because they are in possession of one of his attorneys, which might warrant further inquiry. Moreover, he has given the Court absolutely no basis to understand the purported alibi defense—not even a narrative of where, exactly, he was on the date in question, or what he was doing. He makes only conclusory and self-serving allegations that his counsel was presented with evidence of his purported alibi and failed to investigate it. In these circumstances, habeas relief is unwarranted.[3]

Finally, I note that petitioner's submission to this Court directly contradicts what he stated in his plea allocution. *See United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) (holding that conclusory statements contradicting those made at plea allocution were not sufficient grounds to withdraw a guilty plea). Petitioner admitted in his plea allocution that he

---

[3] Petitioner cites *Lynn v. Bliden*, 443 F.3d 238 (2d Cir. 2006), for the proposition that failure to investigate alibi witnesses can constitute error by counsel. However, *Lynn* did not deal with alibi witnesses at all. Rather, it dealt with three issues: counsel's failures (1) to re-open the *Wade* hearing; (2) to cross-examine eyewitnesses; and (3) to introduce evidence of a detective's police report. *Id.* at 248-53.

11

was in fact the one who committed the crimes in the indictment and has to date not produced any exculpatory evidence to the contrary. In these circumstances, Petitioner has not shown deficient representation or prejudice.

### b. Eyewitness Identifications

The petitioner next asserts that his counsel rendered ineffective assistance of counsel prior to his guilty plea by failing to challenge eyewitness testimony. Specifically, he states, "Instead of challenging the eye witness testimony, defense counsel" instructed him that he should plead guilty and that "[e]yewitness identification testimony is notoriously prone to error."

Petitioner's arguments are not persuasive. While the Court appreciates that the Supreme Court has recognized "[t]he vagaries of eyewitness identification" and "instances of misidentification," *United States v. Wade*, 388 U.S. 218, 228 (1967), the Court is aware of no categorical bar against admitting evidence of such identification at trial. *See, e.g.*, *id.* at 240 (noting "a per se rule of exclusion of courtroom identification [by an eyewitness] would be unjustified" where "the admissibility of evidence of the lineup identification itself is not involved" and noting lineup identification "is most often used . . . to crystalize the witnesses' identification of the defendant for future reference"). Indeed, it is routinely admitted, as the line of cases following *Wade* make clear.

Rather, the *Wade* Court addressed the issue of whether a defendant's counsel needed to be present at a pre-trial identification to avoid "improper suggestion." *Id.* at 229-39. In considering the standard for striking courtroom identifications, the Court concluded that the government must have "the opportunity to establish by clear and convincing evidence that the

12

in-court identifications were based upon observations of the suspect other than the lineup identification." *Id.* at 240.  This opportunity has taken the form of an evidentiary hearing and become known as a *Wade* hearing. *United States v. Gershman*, 31 F.4th 80, 92 (2d Cir. 2022).  "The purpose of a *Wade* hearing is to determine before the trial whether pretrial identification procedures have been so improperly suggestive as to taint an in-court identification." *Id.* (internal quotation marks omitted) (quoting *Lynn v. Bliden*, 443 F.3d 238, 248 (2d Cir. 2006)).  The request for a hearing is generally predicated upon a "contention that the pretrial identification was the result of impermissibly suggestive procedures," but it is not required in every case. *Id.* (internal quotation marks omitted).  To prevail on an ineffective assistance claim predicated on the failure to request a *Wade* hearing, a petitioner must show "some likelihood for success at the hearing." *Lynn*, 443 F.3d at 249.

  To the extent that Petitioner asserts his entitlement to a *Wade* hearing, he states no basis for any improper suggestion regarding any of the eyewitness identifications in his case. And given the Second Circuit has concluded that there is no *per se* rule requiring a *Wade* hearing, *see United States v. Archibald*, 734 F.2d 938, 940 (2d Cir. 1984), the Court does not see how any failure request a *Wade* hearing would render counsel constitutionally ineffective, without more of a showing by Petitioner.  Again, Petitioner's conclusory and self-serving assertions are insufficient to support his claim for relief.

  Further, even assuming there were a basis to challenge the eyewitness identification, whether via *Wade* hearing or some other mechanism, Petitioner's claims remain unpersuasive. Claims that a motion omitted by counsel "'might be considered sound trial strategy'" alone do not constitute a basis for ineffective assistance. *Strickland*, 466 U.S. at 689 (quoting *Michel v.*

13

*Louisiana,* 350 U.S. 91, 101 (1955)). Even where a Petitioner asserts defense counsel should have investigated a purported eyewitness who can testify that the defendant was not seen at the crime scene, courts have found it "implausible that [the eyewitness] could have provided helpful testimony." *See Pena v. United States*, 355 F. Supp. 3d 174, 181-82 (S.D.N.Y. 2019). Likewise, eyewitness identification erroneously admitted after the court denied a *Wade* hearing, has been deemed harmless in some circumstances. *See Roberts v. Scully*, 875 F. Supp. 182 (S.D.N.Y. 1995).

Here, while it might have been sound trial strategy to have attacked the credibility or even the admissibility of the eyewitness identification had there been a trial, there was ultimately no trial. Further, Petitioner's failure to provide any specific basis to question the reliability of the pre-trial identifications in his case for which a *Wade* hearing would have been warranted, doom his argument on this point. In sum, the Court has no basis to conclude that counsel's failure to challenge pre-trial identifications of Petitioner fell outside the range of professional assistance sufficient to render counsel constitutionally ineffective. Accordingly, Petitioner has shown neither the deficiency of his counsel nor prejudice. Thus, the Court should deny the motion on these grounds.

### c. Petitioner's Claim that Counsel Unduly Pressured Him to Plead Guilty

Petitioner next asserts that his attorneys rendered ineffective assistance of counsel prior to his guilty plea by pressuring him to plead guilty. He makes a few claims to support this contention. First, he says that his counsel told him his mother could be arrested if he failed to plead guilty. (ECF No. 79, at 16.) Second, he says that his counsel tried to convince him there was "nothing that can be done except to plead guilty." (*Id.*) His counsel also mentioned the

eyewitnesses and said he didn't have enough time to fully prepare. (*Id.* at 17.)  Next, Petitioner says Mr. Walters told him a fair trial with the federal government was "impossible" and he would be convicted "regardless." (*Id.*)  Finally, he alleges counsel said that if Petitioner "complain[ed] to the judge about any of these things, [his] sentence w[ould] be more severe."[4]

These arguments are unpersuasive.  When a Petitioner claims ineffective assistance due to improper pressure to plead guilty by counsel, courts routinely turn to the plea allocution. *See United States v. Logan*, 845 F. Supp. 2d 499, 511 (E.D.N.Y. 2012) (collecting cases).  Indeed, "a defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw his guilty plea." *Torres*, 129 F.3d at 715.  Here, Petitioner, who was under oath, stated during the plea allocution that he was not being forced to plead guilty and that he was satisfied with Mr. Walters's representation.  Further, he admitted he was guilty of the crimes to which he pleaded guilty and answered questions about what he did to satisfy the Court that he was in fact guilty of the crimes to which he pleaded guilty.  Among other things, Petitioner admitted to participating in robberies with other people, including robberies on January 3, 2019, January 14, 209, and December 31, 2015, and that he brandished a firearm during a robbery that occurred on January 3, 2019 and actually shot a person in the head during that robbery.  Petitioner fails to explain how his counsel exaggerated the risks of going to trial.  There is nothing inappropriate of advising a defendant of potential witnesses (including potentially Petitioner's mother) or of the consequences of their failure to comply with potential subpoenas.  And he has not identified what other steps his counsel should have taken with

---

[4] For the reasons stated in this Report and Recommendation, the Court omits a statement from Mr. Parker, who did not advise the operative plea, that he believed Petitioner was guilty. (ECF No. 79, at 17.)

regard to plea advice but did not take. He does not say his attorney's advice regarding a plea would have changed if his attorneys' had more time to prepare for trial or that there was something that he did not understand about the government's case that had he known, he would not have pleaded guilty. Rather, three different attorneys' advised Petitioner to plead guilty given the evidence the government had compiled. Petitioner thus cannot overcome the "strong presumption" favoring a finding that counsel's assistance fell within a constitutional range. *Strickland*, 466 U.S. at 689. In short, Petitioner's conclusory allegations that his attorneys were deficient in representing him in connection with his guilty plea are insufficient to satisfy *Strickland*. *See Slevin v. United States*, No. 98-cv-0904 (PKL), 1999 WL 549010, at *5 (S.D.N.Y. July 28, 1999) (noting conclusory allegations of lack of preparation are insufficient to show prejudice).[5]

### d. Counsel's Alleged Failure to Prepare for Trial

The petitioner claims that, leading up to the trial, he "was concerned at the lack of motions being filed in preparation for trial." He says he was told by counsel that there was not enough time to "fully prepare." (ECF No. 79, at 17.)

The record in this case is insufficient to show prejudice resulting from counsel's lack of preparation. The Petitioner has failed to explain what further preparation was needed. To the extent his reference to motions would involve a motion to suppress evidence from a search or a

---

[5] Petitioner's sole citation in reply, *Parisi v. United States*, 529 F.3d 134 (2d Cir. 2008), does not aid his case. While it is true that the *Parisi* court correctly cited the standard for vacating a plea based on a claim of ineffective assistance of counsel, the *Parisi* decision affirmed the district court's denial of post-conviction relief because the petitioner had not shown entitlement to relief. *Id.* at 135-36, 141.

motion for a *Wade* hearing, he has not explained why these motions would have changed his decision to plead guilty. His bald assertions are thus insufficient to warrant relief.

### e. Mr. Parker's Admission

Finally, the petitioner claims Mr. Parker was constitutionally ineffective because he admitted to Probation Officers conducting a presentencing investigation that the petitioner had "shot someone with a gun." Petitioner alleges this was tantamount to "admitt[ing]" his guilt. However, because any claims against Mr. Parker are moot, the Court should deny relief as to this claim.

As a result, Petitioner has failed to show that his counsel was ineffective—or that any such ineffectiveness resulted in prejudice. Accordingly, I respectfully recommend denying the petition based on the claims of ineffective assistance of counsel.

### 2. Petitioner's Fourth Amendment Violation Claims

Petitioner asserts his Fourth Amendment rights were violated as the result of an illegal detention that occurred on March 7, 2019, at approximately 7:40 a.m. According to Petitioner, his cell phone was seized "incident to the arrest." The Court scheduled a suppression hearing, but it was canceled.

As an initial matter, it is difficult to understand the basis of Petitioner's complaint. He states no reason why the arrest or detention was defective, let alone why the phone seizure was defective in light of the arrest. *See, e.g.*, *Corley v. Vance*, 365 F. Supp. 3d 407, 443-44 (S.D.N.Y. 2019) (quoting *United States v. Robinson*, 414 U.S. 218, 235 (1973), and noting in the context of a § 1983 claim that "'a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search'").

But that is beside the point. The petitioner's guilty plea negates his ability to raise such a challenge under 28 U.S.C. § 2255. Since the undersigned has concluded that Petitioner has failed to show his counsel was constitutionally deficient, and Petitioner has failed to explain how the failure of pursuing any motion resulted in his guilty plea, Petitioner has not successfully challenged the voluntary and intelligent character of his guilty plea. Thus, he cannot raise a Fourth Amendment claim. *Jackson*, 2023 WL 6629582, at *1 ("As relevant here, 'a guilty plea results in the defendant's loss of any meaningful opportunity he might otherwise have had to challenge the admissibility of evidence obtained in violation of the Fourth Amendment.'"); *see also Tollett*, 411 U.S. at 267; *Coffin*, 76 F.3d at 496.[6]

Further, even if the Court were to reach the merits of the Fourth Amendment question, it should deny Petitioner's request. The Petitioner has failed to explain how his conviction, pursuant to a voluntary and counseled guilty plea rather than a trial, was dependent on the suppression or admission of the phone—or even of any "fruit of the poisonous tree"—and thus cannot show that the plea rested "in any way on evidence that may have been improperly seized." *See United States v. Jones*, 43 F.4th 94, 107 (2d Cir. 2022). Petitioner does not challenge that the government withdrew the cellphone evidence from the case. (ECF No. 93, at 3.)

---

[6] On reply, Petitioner cites *United States v. Gregg*, 463 F.3d 160, 164 (2d Cir. 2006), claiming it recognizes "exceptions where suppression issues affect the voluntariness or fairness of a plea." But this was not the holding of the *Gregg* opinion. Rather, the *Gregg* opinion narrowly clarified that the *Tollett* line of cases does not stand for the proposition that a guilty plea "waives" a Fourth Amendment challenge. *Gregg*, 463 F.3d at 163. Rather, "it rests on notions of relevance." *Id.* at 163-64 (citing *Haring v. Prosise*, 462 U.S. 306, 321 (1983) and *Menna v. New York*, 423 U.S. 61, 62 n.2 (1975)). Thus, Gregg—who had been charged in two proceedings, pleading guilty to criminal impersonation in the first—had not by his plea "waived" his ability to challenge, in the subsequent proceeding, the police's seizure of a firearm during a search incident to the same arrest. *Gregg*, 462 U.S. at 165. The Court nevertheless ruled that the stop was lawful under *Terry v. Ohio*, 392 U.S. 1 (1968), and affirmed the denial of Gregg's request to suppress the recovery of the firearm. *Gregg*, 462 U.S. at 166.

On reply, Petitioner cites to *United States v. Arango*, 966 F.2d 64 (2d Cir. 1992), for the proposition that "[c]ourts have a duty to ensure that the conditions under which a plea is entered are free from coercion or undue influence, particularly when such influence stems from alleged constitutional violations." (ECF No. 93, at 3.) However, *Arango* does not stand for this proposition. Rather, the *Arango* court merely addressed the defendant's ability to challenge evidence after entry of a guilty plea. 966 F.2d at 65-67. The court noted that Arango could not challenge the constitutionality of the search leading to the recovery of evidence given his guilty plea. *Id.* at 66. Its discussion of the potential for illegally obtained evidence to improperly "influence" a sentencing judge came from *United States v. Schipani*, 435 F.2d 26 (2d Cir. 1970). As in *Arango*, Petitioner's guilty plea extinguished his ability to challenge the search or seizure of his cell phone. Further, even if Petitioner could challenge it, he has not explained why it improperly influenced the sentencing result or guilty plea beyond conclusory allegations of its "influence[]" over "pretrial dynamics."

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the motion to vacate and petition for habeas relief be denied.

**The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to the pro se Petitioner.**

Dated: October 21, 2025
    New York, New York

Respectfully submitted,

*/s/ Katharine H. Parker*
KATHARINE H. PARKER
United States Magistrate Judge


## NOTICE

Petitioner shall have seventeen days and Respondent shall have fourteen days from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)). A party may respond to another party's objections after being served with a copy. Fed. R. Civ. P.72(b)(2).

Petitioner shall have seventeen days to serve and file any response. Respondent shall have fourteen days to serve and file any response. Any objections and any responses to such objections shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and served on the other parties. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Rakoff. The failure to file timely objections shall result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).